CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
AUG 25 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| H. ANTHONY BAKER, # 185927,<br>Plaintiff, | )<br>)<br>) Civil Action No. 7:05cv00466<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| LARRY S. MULLINS, et al.,<br>Defendants. | )<br>) By: Jackson L. Kiser<br>) Senior U.S. District Judge |

Plaintiff H. Anthony Baker, # 185927, a Virginia inmate proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, plaintiff alleges that while incarcerated at Red Onion State Prison he was subjected to false charges and subsequent loss of privileges and confiscation of his property, excessive use of force, and loss of his ability to earn good time in violation of the Eighth and Fourteenth Amendments. As relief, Baker seeks declaratory and injunctive relief and monetary damages. After reviewing his complaint, I find that Baker has failed to raise any claim of constitutional magnitude and that he has failed to exhaust his available administrative remedies as to his claim of excessive force. Accordingly, I find that his claims must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and 1997e(a).

I. **Claims and allegations**

In his complaint, Baker alleges that on January 8, 2005, during a routine cell search, two correctional officers removed "two sexual nude magazines and a cable cord." He claims that he was never given notice that the officers were going to remove property from his cell.

Baker then alleges that on February 9, 2005 correctional officers again conducted a search of his cell. During that search officers removed a television which had been issued to plaintiff as a

replacement for a television which he alleges was broken by correctional officers during a previous search. Plaintiff was issued an institutional charge of possession of contraband on February 10, 2005 because he was not the registered owner of the television which was removed from his cell on February 9, 2005. At the institutional hearing held on February 18, 2005, plaintiff was found guilty of having contraband. As a result, he was denied phone privileges for thirty days.

Plaintiff alleges that during the hearing he was not allowed to present witness evidence to support his contention that he should have been the registered owner of the television, thus any institutional charge was without merit. Additionally, plaintiff claims that he never received a charge on February 10, 2005. The only charge he admits to having received was on February 9, 2005, for possessing contraband, and because he alleges that a hearing on that matter was continued, correctional officers could not have lawfully begun to restrict his phone privileges.

On March 24, 2005, an institutional order was issued ordering that plaintiff's conviction on the February 9, 2005 contraband charge be re-heard. Plaintiff alleges that he did not receive notice of the rehearing until March 31, 2005. This was contrary to the institutional policy that all such notices be received within five days of the entry of the order. Baker thus contends that because he received notice of the re-hearing more than five days after the order was issued, the charge should have been dismissed in its entirety. However, Baker was again found guilty and the thirty day denial of phone privileges was upheld. Baker claims that he was again denied the opportunity to present favorable witness testimony as to the issue of the contraband television.

On April 9, 2005 while on outside recreation, Baker admits that he yelled at Correctional Officer Kilbourne and Nurse Stidham. Plaintiff claims that he requested Nurse Stidham bring him Tylenol when she made the evening pill pass. Plaintiff further claims that while he was yelling to

Nurse Stidham, Kilbourne made a sarcastic remark. Plaintiff then admits that he, using various profanities, told Kilbourne to mind his own business. After being returned to his cell, Baker was placed on "strip-cell" for approximately seven hours. He claims that while his property was being removed from his cell correctional officers intentionally ripped his mattress. Thereafter he was charged with destroying state property, for the ripped mattress, and making a threat, for the earlier encounter between himself, Nurse Stidham, and Correctional Officer Kilbourne. On April 18, 2005 and May 30, 2005 during the institutional hearings, plaintiff again claims he was denied the opportunity to present favorable witness testimony regarding both the outside encounter and the condition of property inside his cell.[1]

Additionally plaintiff claims that while on "strip-cell" all his property was confiscated and inventoried. He alleges that during that time officers threw away a stack of old newspapers he used as a stool. He also claims that officers misplaced some of his religious materials and legal papers. However when his property was returned to him, plaintiff admits that he signed the inventory sheet indicating that all his property was accounted for.

Next, plaintiff claims that on April 22, 2005 defendants again charged him with a false institutional infraction. He claims that on that date officers failed to come to his cell and request that he return his lunch tray. He was charged the same day with refusing to obey a direct order to return the lunch tray and was placed on loaf diet for three days. Plaintiff alleges that he was denied a fair hearing on this infraction because he was not allowed to present any witness testimony which established that officers failed to request he return the tray, before he was found guilty.

---

[1] Although unclear from his complaint it appears plaintiff received separate hearings on these charges. However, he makes the same allegations as to both hearings.

3

Plaintiff then claims that on April 26, 2005, while he was being returned to his cell following his shower, another inmate spit on him. Plaintiff alleges that the two guards escorting him to his cell then became "aggressive" toward him. He claims that the officers returned him to his cell, but when removing his restraints purposefully jerked the handcuffs causing a cut on his wrist. Plaintiff admits that the medical unit was immediately called, but no medical attention was needed other than rinsing his cut under cold water.

Plaintiff claims that he was again served with a false institutional disciplinary charge for the April 26, 2005 incident. And again he claims that he was denied all opportunity to defend against this charge because both his requests for witnesses and documentary evidence were denied. Additionally, plaintiff claims that he filed an immediate grievance pertaining to the April 26, 2005 incident. He alleges that the Level I grievances was denied on June 30, 2005. Thereafter he appealed that denial and admits that appeal has yet to be resolved.

## II. Analysis

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). However, a complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under 28 U.S.C. § 1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

4

### A. Confiscated Property, False Charges, Loss of Privileges, Restricted Diet

To the extent that Baker's claims that the his property was unjustly confiscated and he was thereafter subjected to false charges and the subsequent loss of privileges and placement on a restricted diet are violations of the due process rights afforded under the Fourteenth Amendment and constitute cruel and unusual punishment under the Eighth Amendment, they must fail.

#### 1. Due Process

Although the Fourteenth Amendment does afford prisoners some due process rights, when a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Such confinement is necessarily subject to the broad discretion of those parties managing the jail. Id. However, the confinement does not strip the inmate of all of his liberty interests. Id. "These interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston, 946 F.2d at 343. Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id.

In this case, Baker fails to allege facts indicating that he has been deprived of any federally protected liberty interest without due process. First, Baker claims that various items of personal

5

property were taken from his cell without first giving him notice that they intended to remove such items.² Although due process usually requires a pre-deprivation hearing when loss of property results from established state procedures, when the deprivation results from a random or negligent act, no such hearing can be reasonably held. Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). Accordingly, when deprivations result from such acts, due process is satisfied by adequate state post-deprivation remedies. Hudson v. Palmer, 468 U.S. 517, 533 ( 1984). The state has established Division Operating Procedures and a grievance procedure of which Baker could avail himself for relief. In this case, it is clear that Baker was aware of available post-deprivation remedies, however he chose not to utilize such procedures. Furthermore, other state law remedies, including the Virginia Tort Claims Act, were available to Baker as a means to seek compensation for his alleged loss. See Wadhams v. Procunier, 772 F.2d 75 (4th Cir. 1985); Ballance v. Young, 130 F.Supp.2d 762, 767 (W.D. Va. 2000). Accordingly, inasmuch as Baker had adequate state remedies, I find that he has failed to state a cognizable constitutional claim in that he has alleged no facts to suggest he has been deprived of rights guaranteed him by the Constitution or laws of the United States. Accordingly, pursuant to 28 U.S.C. §1915A(b)(1), I must dismiss these claims.

Second, Baker alleges that during every institutional hearing regarding the allegedly false charges, he was denied the opportunity to meaningfully defend himself and there was insufficient evidence to convict him of any wrongdoing. Specifically, Baker claims that he was not allowed to present witness testimony nor video or documentary evidence which supported his accounting of the

---

²Baker has alleged that correctional officers took his television, a stack of old newspapers, a copy of a religious article, and copies of papers he intended to utilize in another civil suit. Baker claims that correctional officers destroyed the religious article and the copies of legal materials while making an inventory of his cell contents when he was placed on "strip-cell." However, plaintiff admits that he did not see correctional officers take or destroy these papers. He further admits that he signed an inventory sheet when his items were returned to him following the strip cell indicating that all his property was returned.

6

events. An inmate is afforded procedural protections, including the right to call witnesses and/or present documentary evidence in his own defense only when the loss of statutory good time credits or some other liberty interest is at issue. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). As noted previously, a liberty interest arises when an atypical or significant hardship is imposed on the inmate. Sandin, 515 U.S. at 484. As a result of the five convictions, Baker was sentenced cumulatively to only a thirty day loss of phone privileges and three days on a restricted diet.[3] Neither a loss of phone privileges nor such a minimal dietary change amount to an atypical prison condition. Therefore, Baker was not entitled to any procedural safeguards during the institutional hearing; thus, he has failed to raise an issue of constitutional magnitude. Accordingly, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

To the extent that Baker's claims that there was insufficient evidence to convict him of institutional infractions can be raised under the Due Process Clause, they too must fail. Federal courts will not review the accuracy of a disciplinary committee's finding of fact. Kelly v. Cooper, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). Such findings will only be disturbed if they are unsupported by any evidence or are wholly arbitrary and capricious. Smith v. Rabalais, 659 F.2d 539, 545 (5 th Cir. 1981), cert. denied, 455 U.S. 992 (1982). In this instance it is clear that there was ample evidence to support a conviction on all these offenses.

Baker admits that on February 9, 2005 he was in possession of a television which he knew was not the television which he had registered. Thus, it is obvious that there was some evidence to support the finding that he was in possession of a contraband television. Additionally, Baker admits

---

[3] Baker was convicted at separate hearings of possession of contraband, making threatening statements, destruction of state property, and two charges of disobeying a direct order.

7

that on April 9, 2005, while in outdoor recreation, he requested that a passing nurse bring him a pain reliever and at the same time, using obscene language, told the correctional guard accompanying her to mind his own business. Whatever his intention may have been, yelling and using obscene language can reasonably be interpreted to be threatening. Thus, there clearly existed a basis for that conviction. As to plaintiff's conviction for destroying state property, he admits that his mattress did in fact have an unaccounted for rip at the time the charge was issued. Although he claims that he did not rip the mattress, as the mattress was ripped there exists evidence supporting that conviction as well. Next, Baker admits that on April 22, 2005 he did not return his food tray to officers during the regular tray collection. Although he contends that officers did not request the tray, as he was still in possession of the tray during a subsequent collection there is some evidence which supports his conviction that he failed to return the tray when first ordered to do so. As to the last charge involving the excessive force incident, Baker was charged with failure to obey an order to stand still and have his restraints removed. Baker claims that he readily submitted to having his leg and wrist restraints removed. However, Baker admits that after another inmate spit on him he became agitated, the officers began to treat him aggressively, and he began to resist how they handled him. He further admits that once in his cell, as his restraints were being removed, he continued to resist and again utilized obscene language to tell the correctional officer removing the restraints that he intended to file a grievance against him. Thus, there is some evidence which supports his conviction for failing to obey an order. Based on Baker's own statements, it is clear that there was evidence to support his convictions on the various institutional infractions. As such, these claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Fourth, Baker alleges that as a result of his convictions for institutional infractions and

8

continued placement in segregation his ability to earn good time credit has been diminished, thereby lengthen the time he will be required to serve. As noted above, prisoners are afforded due process protections only when the loss of actual, earned good time credits are at issue. Wolff, 418 U.S. at 539. The Supreme Court has afforded no such rights when merely the opportunity to earn such credit is at issue. Id. In this instance, Baker claims only that his future ability to earn good time credits has been adversely affected by convictions and his placement in segregation. Baker does not allege that he has actually been deprived of any earned good time credit. Accordingly, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. Cruel and Unusual Punishment

Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981) As a result, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate not only that the living conditions violated contemporary standards of decency, but also that prison officials acted with deliberate indifference to such conditions. Wilson v. Seiter, 501 U.S. 294 (1991). Moreover, plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375,

9

1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993). While being denied phone privileges and being placed on a restricted diet, may be inconvenient and unfortunate, Baker has not alleged anything to suggest that these conditions violate contemporary standards of decency. Furthermore, while the food Baker alleges to have been served may not have been to his liking, he admits that he was placed on a restricted diet for only three days. Plaintiff has not presented any evidence which suggests that because of these conditions he has sustained a serious or significant injury or is at risk of a future injury. Therefore, he has failed to state a constitutional claim under the Eighth Amendment. Accordingly, these claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted

### B. Excessive Force

Baker alleges that on April 26, 2005 correctional officers utilized excessive force when removing his wrist restraints because they suddenly jerked his wrist which caused the handcuffs to cut his wrist. The Eighth Amendment protects individuals against excessive prison sentences, as well as inhumane treatment and excessive force while imprisoned. See U.S. Const. amend. VIII. To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-prong standard comprised of both an objective inquiry (whether the harm plaintiff suffered was sufficiently serious enough to amount to a constitutional violation) and a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (1996).

The subjective component of an excessive force claim requires an inmate to demonstrate that the force used by an institutional official, "inflicted unnecessary and wanton pain and suffering."

10

Hudson v. McMillian, 503 U.S. 1, 7 (1992). In evaluating such a claim, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 32-21 (1986)). The Supreme Court and the Fourth Circuit have set out the following factors to consider in determining whether a prison official acted maliciously and sadistically: "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Hudson, 503 U.S. at 7 (1992) (quotations omitted); Williams, 77 F.3d at 762. Also, the inmate must prove the correction official's actions were "'objectively harmful enough' to offend 'contemporary standards of decency.'". Stanley v. Hejirika, 134 F.2d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Although there is no requirement that an inmate suffer "serious" or "significant" pain or injury to demonstrate that a malicious or sadistic use of force was employed, he must allege "more than a de minimis pain or injury." Norman v. Taylor, 25 F.3d 1259, 1263 n. 4 (4th Cir. 1994). "[A]bsent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Taylor v. McDuffie, 155 F.3d 479, 483 (4th Cir. 1998). However, a de minimis physical injury may amount to an Eighth Amendment violation if the force used was of the sort "repugnant to the conscience of mankind." In Norman v. Taylor, the Fourth Circuit stated:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain. In these circumstances,

11

we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,'" and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

25 F.3d at 1263, n. 4 (citations omitted).

Baker claims that correctional officers jerked his wrist and caused the handcuff to cut open his wrist. Although Baker claims that blood began "pouring" out, it is clear he is exaggerating the extent of his injury. Baker admits as soon as correctional officers were notified of the injury, they immediately contacted the medical unit. He further admits that medical staff visually inspected the wound and ordered him to run cold water over the cut to stop any bleeding. No further medical attention was necessary. Accordingly, I find that the injuries he alleges to have suffered are de minimis and do not amount to a constitutional violation.

Furthermore, it is clear that plaintiff has not exhausted his administrative remedies as to this issue. In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") in an attempt to reduce the number of frivolous civil rights cases filed by prisoners. In the PLRA, Congress amended 42 U.S.C. § 1997e, the provision relating to prisoners' exhaustion of administrative remedies. As amended, that section requires that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2000). By the plain language of the statute, exhaustion of administrative

remedies is a precondition to the <u>filing</u> of a prisoner's civil rights action; thus, a plaintiff who filed his lawsuit before exhausting administrative remedies cannot satisfy the §1997e(a) requirement, even if he later demonstrates that he filed a grievance and appealed it to the highest extent of the prison's grievance procedure <u>after</u> commencing the lawsuit. See <u>Dixon v. Page</u>, 291 F.3d 485 (7th Cir. 2002), <u>citing</u> <u>Perez v. Wisconsin Dep't of Corrections</u>, 182 F.3d 532, 535 (7th Cir. 1999). The United States Supreme Court has held that Section 1997e(a) applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," <u>Nussle v. Porter</u>, 534 U.S. 516, 122 S. Ct. 983, 992 (2002), and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies, <u>Booth v. Churner</u>, 532 U.S. 731, 121 S. Ct. 1819 (2001).

Inasmuch as Baker admits that he has not yet received a reply to his appeal of the regular grievance in this matter and that he has failed to file an appeal to the highest level available to him within the prison grievance procedure for this claim, he fails to demonstrate that he has complied with pre-filing requirements, pursuant to § 1997e(a). Accordingly, this claim must be dismissed.

### III. Conclusion

Based on the foregoing, I find that Baker has not presented any claims on which relief can be granted. Therefore, I will dismiss the complaint without prejudice.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

13

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

**ENTER:** This 25th day of August, 2005.

/s/ Jackson L. Kiser
Senior United States District Judge